We are going to move now to Appeal 21-2284. F. J. A. P. v. Garland. We're going to begin with oral argument from the Appellant, and we'll begin, Mr. Graver, with you. Thank you, Your Honors. May it please the Court, Harry Graver for Petitioner. I'd like to reserve three minutes for rebuttal. The Board's decision below rests upon a basic flaw. Where the Board was supposed to review the Immigration Judge's decision for clear error, it instead went about searching for a smoking gun. That was a square misapplication of clear error review, but as a result of that misapplication, the Board set aside a plainly meritorious claim. Before the Immigration Judge, Petitioner proffered credible, individualized evidence to substantiate his CAD claim. That evidence showed that Petitioner was someone who was personally targeted and extorted by the gang repeatedly. That evidence shows that Petitioner was someone who rebuffed the gang and went so far as reporting MS-13 to the police. And the evidence shows that Petitioner was someone who was already borne the costs of that insubordination, forced to flee to save his own life and forced to endure the death of family members who could not do the same. In light of all of this, it was at minimum permissible, permissible, for the Immigration Judge to conclude that there is a substantial risk that if Petitioner was sent back to El Salvador, MS-13 would make good on its word and kill him. The BIA set all of this aside only by misunderstanding the record and conflating reasoned inference with unadorned speculation. At bottom, the decision below is an archetypal misapplication of clear error review. It is the sort of mistake this Court has corrected before, and it's the sort of mistake this Court should do so again here. I'm glad you began with merits because we can never lose track of merits. However, there's a very large jurisdictional issue here. I figured there was a chance that, yeah. So I appreciate your comments with regard to the merits. Why don't we get your thoughts on jurisdiction? So jurisdiction, our basic point is that the status quo is neither broken nor in need of fixing. A reinstatement order becomes a final order once withholding only to review a petition of review, reviewing that reinstated order once it becomes final. What are we to do with Bhaktabhi Patel, the dissent in Ruiz, all of these cases that are telling us that we may not have jurisdiction? So I think that with Bhaktabhi or whatever, I think that the key defect there is unduly relying on the definitional provision in A-47 and kind of using it as a shorthand. I think that's the essential defect with it. And also over-reading Nasrallah and Johnson. I'm happy to talk about each in turn. Please do. With respect to the Second Circuit's decision, I think the key reason why, the key mistake there is that the board assumed under A-47 that a reinstatement order becomes final once issued because essentially what they said is that's when the administrative process is over. That's when it's administratively final. The difficulty is that the definitional provision in A-47 doesn't control because it does not apply. It clearly contemplates BIA review. But there is no BIA review in reinstatement decisions. I think another key point is that the Second Circuit's decision plugs back into the whole statutory scheme quite poorly. First and foremost, with FARA, Congress established a clear policy that aliens are broadly entitled to cat relief and that cat claims would be broadly reviewable in the federal courts. In so doing, it didn't distinguish between ordinary and reinstated proceedings. Instead, it used broad language. It used the term any person. There's two other indicia within the statutes, within the immigration laws as a whole, that I think confirm this understanding. The first is the REAL ID Act. In the REAL ID Act, Congress clearly presumed a single round of judicial review for cat claims. There, too, it did not distinguish between ordinary and reinstated proceedings. But in neighboring provisions, and this is the second point, in neighboring provisions, Congress showed that it knows how to strip jurisdiction when it wants to. Look no further to A-4 itself. There in the REAL ID Act, Congress stripped jurisdiction of cat claims in expedited proceedings. Congress knows how to strip jurisdiction over cat claims. It did so with expedited proceedings. It did not do so with reinstated proceedings. And courts have been doing this for decades. There hasn't been a whisper in Congress that they've gotten this wrong. I would move then to, I guess, Nasrallah and then Johnson, I guess taking them in order. Nasrallah, of course, didn't involve reinstatement proceedings. It simply said that an order of removal is distinct from cat. We completely agree with that. But it did not get into when an order of removal becomes final for purposes of judicial review. On that score, though, to the extent Nasrallah said anything, I think it only helps us. One is that Nasrallah affirmed that FARA is an independent grant of jurisdiction that extends to any person facing torture upon removal. Again, it does not distinguish between ordinary and reinstated proceedings. And the other part is that Justice Kavanaugh was clear. He emphasized expressly, nothing in this opinion disrupts the existing authority of courts of appeals to review cat claims. And at the time, everyone agrees that every court of appeals in the country would hear a case like ours on this posture. With respect to Johnson, Johnson involved different text. There, the issue is whether it was administratively final versus final. Ordinarily, when Congress uses different words, it has different meaning. And that rule should apply here in full measure. I think it's helpful to understand Johnson, too, in context. There, the question was about detention. When we're dealing with removal, there are two distinct issues. One is the whether question, whether you're going to send someone out of the country. The other is the where. We know where they're going to go. In the context of detention, it makes all the sense in the world for Congress to want someone detained once the whether question is answered. Once we've decided we're sending them out of the country, we want them detained in the interim. Congress used the phrase administratively final as a shorthand for that. But final for purposes of judicial review is very different. For the reasons we explained in the brief, the way the statutory scheme works is that it becomes final for purposes of judicial review when the whether and the where questions are answered, and when the order of removal is ultimately legally operative. What about, Mr. Graver, footnote six in Johnson? There's debate as to how certain the court was on this question. So I think that, so in footnote six, they reserved the issue. I think what's telling about footnote six is that the court is keenly aware of this possibility. Aware but not decide. Is that fair? Aware but not decide. But what I would point to a little bit is a telling sign to Santos-Zachariah. Santos-Zachariah reviewed a case in a posture like ours, something it could not do if the Second Circuit was correct, something it could not do if the authors of Nasrallah or Johnson thought they were subtly stripping jurisdiction. Was that issue raised at all in Santos-Zachariah in any of the briefings? I didn't see it, and I know the Supreme Court can sui sponte, take it up, and has to assure itself it has jurisdiction. But I didn't see the Second Circuit's case or this particular issue highlighted or flagged for the court in any briefing. So in Johnson- In Santos-Zachariah. Oh, sorry, in Santos-Zachariah. No, I don't think it came up. What we would emphasize, though, is that the majority said, I think once or twice, at least once, that we have a sui sponte obligation to assure ourselves of jurisdiction. The circuits, I think, Bakhtabai had already come out at this point. I think the circuit split was on the court's radar. Obviously, it's an implicit sign, but it's a telling enough sign that the Second Circuit decided to reassess its own positions. As the government had in its supplemental brief, they collected a couple of orders. So it's a hint, nonetheless. I don't think it's something for us to- we're not hanging our hat on it, but I think it's a telling sign that the court was not trying in Nasrallah or Johnson to strip jurisdiction over a huge class of claims. All this aside, the government suggests that we don't even need to reach the issue of jurisdiction. Do you agree? Yes, we completely agree. I think that, if anything, this is an easier case than Santos-Sacaraia. They are with the exhaustion requirement. That D1 provision is specifically directed to courts. It says courts may not hear unless administrative remedies have been exhausted. Here it's a party-specific provision. It's just a deadline for filing a brief. Since 2006, I think it collected at least four examples where the court has said that those are quintessentially non-jurisdictional claim processing rules. So I don't see that there's really a cogent or compelling reason for why D1 is non-jurisdictional, but B1 somehow is. So we are 100% in agreement with the government, and they affirmatively waived it in our case. How do we address the Supreme Court's opinion in Stone, where it said this was jurisdictional, if we want to go down that route? So I think that Santos-Sacaraia provides good help in that regard. You know, with Stone, the idea is it's jurisdictional and mandatory. Finding the provision was jurisdictional wasn't essential to the case. Once it was mandatory, the question of equitable tolling was answered. I think that if Santos-Sacaraia said nothing, it would be a murkier ground. But the fact that they specifically called out Stone as an example of the court using the term jurisdiction loosely is quite telling, and I think would allow this court to take the best reading of B1. Is that specific enough for us to not find Stone binding on us as to jurisdictional? I think so. I think that... Because they didn't specifically overrule it or change it or say it doesn't apply. I think that absent the court's own mea culpa, this would be tougher. But I think once the court has said, we have used the term jurisdiction incorrectly in all of our prior opinions, and they point to Stone as a key example of that in a case whose reasoning I think is irreconcilable with treating Stone as jurisdictional, I think once you string all that together, this court is free to give B1 its best meaning. And I checked yesterday. I have not found any court of appeals that has adopted this argument yet. I know it's a new argument. The government has switched its position and is now arguing that this is more of a claims processing rule than jurisdictional. Are you aware of any cases that have either adopted this or rejected it? I'm not aware of courts weighing in one way or another. Obviously, Sancho Zachariah is only a few months old. Great. So yeah, I think it's a complete... With respect to B1 itself and Sancho Zachariah, I think it's a blank slate. I know it's percolating. I think it's percolating. It would be great if you guys want to be the first. I would like to return to the merits. I'm looking at our decision in cases like Brito and Estrada, I think it's Martinez, and we said that you don't have to write... The BIA doesn't have to write an exegesis, they said, on every contention that they come across. So how much should the BIA say when they disagree with what the IJ has done? I think that Brito is excellent and puts its finger on the exact issue here, which is when does reasoned inference cross into undue speculation, and what is sort of the deference that courts are supposed to attach to the board's findings? I think Brito is correct that simply labeling something as speculative isn't necessarily a hallmark that the board is misapplying clear error, but at the same time, for the board just to say something is speculative without more doesn't insulate it from this court's review. I think this court assesses whether the board applied clear error as much as it would assess how a district court, or how a court would apply clear error itself. I think there's a sliding scale depending on what's in the record, how much the board needs to say. But to the extent that it doesn't grapple with the facts, to the extent that it seems to treat its mandate for clear errors in more searching terms of review, I think it needs the basic dictates of reasoned decision making need to be met. Here on each three points as we outlined, I think the board flunks that at each turn. I'm not saying that the board necessarily needs to write a novel for every single point. Some things are very clear from the record, but when there is strong record evidence as there is in this case, the board needs more than what they did here. Mr. Craver, if we find that the board applied de novo review or did not apply clear error review, do we still need to address the substantial evidence argument? No. Why not? So the substantial evidence argument, I think, is sort of a fallback alternative argument that we have. That to the extent that you treat the board's opinion as a standalone order, it still needs to survive substantial evidence review as kind of a last resort. But foremost, the board's opinion rises and falls on its own terms. To the extent it misapplied clear error, the court has two options under Estrada-Martinez. One is that this court can grant cap relief on its own. To the extent it's not inclined to do so, the proper course is to vacate remand with the board and repeat the same mistakes. Would you like to reserve the rest of your time for rebuttal?  Thank you, Your Honor. Thank you very much, Mr. Craver. Mr. O'Malley, we'll move to you now for argument on behalf of the appellee. May it please the court. My name is Andrew O'Malley. I represent the Attorney General of the United States. This court has jurisdiction over this petition for review. Although recent developments in the Supreme Court have caused some confusion on this issue, an appropriate reading of the various authorities supports the conclusion that an individual-like petitioner who goes through withholding-only proceedings must file a petition for review within 30 days after the conclusion of those proceedings. This is a nuanced question. Is there any daylight between your position and the position that Mr. Craver has articulated? Not really. Not in those terms. We are in agreement as to the proper approach. I think this court has precedent saying that a reinstated removal order is an order of removal, which there was some question on that in Bhaktabhai Patel, but this court has that precedent to fall back on. The question really is finality, and we think the proper approach is the approach taken by all of the circuit courts to address this prior to Bhaktabhai Patel, which is that the process, that's when finality should attach in this instance. We are in agreement, of course, that neither the statute nor Nasrallah nor Johnson v. Guzman-Chavez provides any real answer here. Nasrallah, of course, focused on— Provides any real answer on finality? It doesn't provide any real answer on finality. It's whether the CAT order is itself an order of removal. It doesn't get into finality. The Tenth Circuit, in its decision, basically said Luna Garcia is consistent with Nasrallah. It just didn't—Nasrallah doesn't say anything that goes against that. Judge Timkevich and Ide's concurrence was a little stronger than that, though, right? But for Luna Garcia, they might not have joined Judge Matheson with regard to that point. That's true, and that's correct. The courts that have fallen back on this at this point are courts that have standing precedent that says that this is the way that you approach the 30-day deadline. Is this court's precedent presuming that or outright holding that? It is presuming that. I don't think that the court's precedent—I think it's eager. It's not strong enough on that point to say that it's controlling here. But absent that, I think the proper approach is the approach that was taken prior to Bakhtabai Patel and that the courts have fallen back on since, mainly because there's nothing that specifically answers this question. Again, not the statute, not the recent Supreme Court cases. And in that instance, we fall back on general principles of administrative law where finality attaches at the consummation of all the proceedings. We fall back on the presumption of reviewability that attaches to immigration court proceedings and the fact that the statute specifically provides for review of CAT determinations and withholding determinations. And of course, the zipper clause that says that all of these things are to be reviewed at the same time. These all demonstrate that the presumption of reviewability should attach here and suggests that we shouldn't preclude review of these withholding-only determinations. What are your thoughts on this debate about footnote 6 in Johnson? I think footnote 6, especially given the arguments that were made by the government at the argument for Johnson v. Guzman-Chavez, which is simply that there's something different here. There's something different between administrative finality for the purposes of detention and judicial review. I think footnote 6 is the Supreme Court stepping aside and that is saying, we're not saying anything about whether or not these are reviewable decisions. This is limited to the detention context. So I don't think that answers the question here, and again, in the absence of that clear precedent or statutory provision, we fall back on administrative law principles, the presumption of judicial review. To the extent that this may raise constitutional concerns, a candidate of constitutional avoidance would demonstrate that we should provide for review here. And also this fact that these are provisions that implement our international and treaty obligations and we want the agency to get it right. Would it conflict with the statute to find that, to find finality at the end of the withholding proceedings? I don't think it conflicts with it, Your Honor. It's certainly the, even the definition itself speaks to order of deportation. This is, of course, an order of removal. It was never fixed as we went through the process of providing for truncated proceedings like we have at issue here or stripping jurisdiction away in criminal proceedings. Nobody ever went back and fixed this definition, and there's no indication that it was meant to, that development of the law was meant to strip jurisdiction of these issues. I don't think it specifically answers that question, and in that case, we fall back on our principles. Put to the side the horizontal stare decisis question in the Fifth Circuit in Ruiz. Why do you believe Judge Oldham's dissent reasoning to be incorrect? In the Fifth Circuit? In the Fifth Circuit, yeah. He dissents from Judge Smith's majority opinion, reasoning through that finality attaches to what he calls a reinstatement decision, which is a reinstatement order. Well, I think they'd say, I think we'd go back to the functional equivalent analysis that this is a functional equivalent of an order of removal, right? You can't avoid the reality that even if you get to the textual concern that an order of removal is the original removal order and this is just a reinstatement order, there is the reality that this individual's here, and this order of removal, or this order is going to function to remove that individual, and I think that is where this Court's precedent on that issue falls down, and I think it stands. There's nothing clearly inconsistent here. I was moving to jurisdiction now because you do argue in your supplemental brief that we don't need to reach it, and so why should we hold back? Don't we have an independent obligation to assure ourselves of our jurisdiction? You do, Your Honor. I think you don't have to here. There's no real reason to get into that determination if you find that the 30-day time limit starts at the end of the withholding-only proceedings. There's no reason to get into that matter because you would have jurisdiction anyway, and I would note, I'm sorry to take a side step to answer a question that you presented earlier. It does. Thank you. The Fourth Circuit actually rejected the argument on the jurisdictional question on whether or not the time limit is jurisdictional, but did so two weeks after the issuance of Santos-Zachariah without the benefit of our argument, and they didn't really grapple with the analysis in Santos-Zachariah with respect to Stone. I'm sorry. I hope I answered your question properly, saying that there's no reason to get into it here if you find the 30-day time limit starts at the end of withholding-only proceedings. We think that you can. We think the easier course is to go with the finding that the 30-day time limit starts at the end of withholding-only proceedings simply because it doesn't require this Court to overturn any precedent. You're writing on a clean slate there. It's also that when the time limit starts, whether it's at the end of withholding-only proceedings, is something that litigants need to know. So we think that that's the proper way for you to go in terms of deciding this case. But if you're not inclined to make that determination, you can find that Santos-Zachariah is clearly inconsistent with your precedent holding that the time limit is jurisdictional. At that point, we waive the application even though we raise the timeliness question here, and the Court should address this case on the merits regardless. Why didn't you raise that argument before? The claims processing argument. Santos-Zachariah came out before we or after we filed that brief. The Auerbach and Kui-Fung Wong and the whole line of Supreme Court cases over the last decade that has been, that's made it very clear, Congress has to give a clear jurisdictional direction in a statute for it to be jurisdictional, which is the principle you're relying on. That's absolutely, it's a fair point. But it didn't come up in Santos-Zachariah for the first time. That's my point to you. Why didn't you raise it before based on all this other precedent? It's absolutely, it's a fair point. I think that the operative thing in Santos-Zachariah is just the discussion of Stone, right? We had a clear precedent at that point, up until Santos-Zachariah, with Stone saying this is jurisdictional. It's not so clear anymore. And I think Santos-Zachariah directly conflicts with or implicitly overturns Stone. Why the change in the government's position on jurisdiction? Is it just difference in policy perspective? It's unusual for the government to completely reverse the position it's been advocating and successful in. Why the change? Well, for clarity, are you asking about strictly the jurisdictional position or the Bhakta Bhai Patel position as well? The Second Circuit. The Second Circuit position. Yes, yeah. Because you've been advocating that for a while. You've advocated that in this court and a couple of other cases that have been argued before this one last term. And the complete switch is surprising. That's also a fair point. And I know it's unusual. I think we've had a chance to sit with the cases, to sit with Nasrallah, to sit with Johnson v. Guzman Chavez, and to understand their implications a little bit more. I think it's also the fact that at the Second Circuit, as my colleague notes, has started to make noise about reconsidering its position in Bhakta Bhai Patel, not the least reason which is because of Santos-Zachariah and the court taking jurisdiction over the withholding-only claim like this. I think it's addressed, it's going to address that in two separate cases. It's asked for briefing on that in two separate cases. And that happens, I think, in October. And I would note as well, in terms of the Fifth Circuit's recent decision, we've moved to extend the deadline to file a rehearing in that case. They didn't have the benefit of this argument that we're presenting to you when they made that decision. So the procedural posture is PFR has been filed or PFR has not been filed in the Second Circuit case? In the Second Circuit case, there's two PFRs pending. Those cases are awaiting briefing on this issue. All right. And that's the October? That's correct. I believe it's October that those briefs are due. Thank you. That's absolutely right. Turning to the merits, Your Honor, I think the board employed the proper standard of in overturning the immigration judge's CAT determination. The board articulated the proper standard, the clear error standard. The board explained that the IJA's prediction, a predictive determination that petitioner faces imminent risk of death was clear error because it was based on assumptions and a series of hypotheticals. Now, when you have two permissible views of the evidence and one is okay, then the board can't substitute its judgment as to other. But the board's determination here is that the IJA's determination was not permissible. It was not a permissible determination because it's based on hypotheticals and speculation. And the board's determination shows, as it goes through why it made that decision, that it did not misapply clear error review. With respect to whether or not the petitioner was approached by a high-ranking gang member, the board determined that the evidence does not support that determination. Whether anybody has a continued interest in petitioner, the board determined that it was insufficient evidence to support that determination. And whether he's personally at risk, again, it was insufficient evidence. The board was not saying that they did not find that evidence persuasive, saying that there's no evidence here on which to make that speculative determination. And I think any review of the IJA's decision shows that to be true, where the IJA simply says clearly this individual was approached by a high-ranking gang member, and obviously this individual is going to be at risk of torture in the future. But that isn't based on any facts in the record. The IJA's decision is short, the petitioner's counsel suggests that there should be a sliding scale with respect to the facts, but there's really no facts here. It's a really basic claim. It's a really bare-bones record, and the board's determination in that instance is sufficient here. But is the board required to do a little more? Because when you look at, you look at cases like Brito or Estrada Martinez, and the board actually says more than it says here. Now, are you saying there was nothing more to say here because there's simply no evidence? Or was the board required to just do a little more to explain? Because if you just say there's insufficient evidence, you could get away with that and move on all the time, and potentially move the goalpost in every case. What is, what would be sufficient? That's the role of the IJA sitting there with the evidence before him or her. I think that's right, Your Honor. I don't think there's, I think on the facts of this record, this board decision is sufficient. I think it does need to be based on the facts that are presented before the IJA and that the IJA relies on, and here, again, it's a bare-bones IJA decision with bare-bones facts presented to the immigration judge, and there's really nothing more for the board to say because there's nothing else presented. What's your answer to Petitioner's argument that if, you know, these are permissible inferences that the IJA is drawing from what FJAP is telling the IJA? And so if it's permissible, since the board doesn't re-weigh, the IJA's decision stands. I'm sorry, I have 10 seconds. May I go over just a second? Yes. Yes, ma'am. The fact is, again, it's, there are permissible inferences, but these are not, this is not a permissible decision because it is based on speculation and a series of hypotheticals. The evidence doesn't show that that leap in logic that the immigration judge is making, clearly he was targeted by a high-ranking gang member. The evidence doesn't show that. So what did he need to show? I think, I don't know what would have been sufficient to show that that's really for the board. And the BIA doesn't tell us either, do they? They don't. But they do say that there's no evidence here to support those conclusions. I don't know what that evidence would be, but on clear error of view, the board can say there is no evidence to support that determination. Thank you, Mr. O'Malley. Thank you very much. Thank you. Mr. Graver, we'll go back to you. Three minutes for rebuttal. Thank you, Your Honor. So two points on jurisdiction and one on the merits. It was asked whether the Second Circuit's approach conflicts with the statute. I think the answer is yes. Congress clearly provided in FARA has confirmed in the Real ID Act that there should be judicial review over reinstated orders. The Second Circuit forecloses that as a practical matter, so it conflicts with the statute. There's a point about Judge Oldham's separate writing. I'll leave the second part of it aside, since we talked about that before, about just when finality happens, on the point about why is a reinstatement decision in order at all, which is the first part of Judge Oldham's writing. This court has held for long that it has. Every court of appeals has. This court recently did in Lemos. And that makes good sense. It fits the definition of 847 like a glove. 847 says an order of removal is any order that orders removal, a reinstatement order of removal. It does so. You can look at the last page of the BIA's opinion. It says, further order, petitioners shall go back to El Salvador. So it is, reinstatement order is an order of removal. On the merits, without kind of getting into everything, I think that the high-ranking gang member is a useful point to focus on, because I think it really captures the flaws of the board's decision below. I think it's undoubtedly permissible for the immigration judge, the fact finder, to credit a petitioner's account. This has been a petitioner's story from day one. So what he told the police down there, people were saying there's no evidence in the record. There are two police reports. That's what he told the police down there. It's captured in writing. It's what he told immigration officials here. It's what he testified to below. And it's what the immigration judge found credible. What's important is that the BIA needs to play by its own rules. Under its own rules, testimony alone is sufficient. That's 1208.16. So once testimony's credible, once it substantiates a cat claim, you can only set it aside if it's implausible on its own terms. Is it enough, though, to draw the inference that it actually was a high-ranking member as opposed to he believed it was a high-ranking member? Because he certainly testified he had the call, and he was told this is a high-ranking member. Right. So I think that the inference is undoubtedly permissible, because it's the only thing that really makes sense. Which one? Because there are two there. Is it sufficient to infer on its own that this was a high-ranking member? Yes. Why? Because it's the only thing, I think, that makes sense of the course of conduct surrounding the episode. You recall that Petitioner was being extorted by the gang for months for $20, but here there's a huge change in conduct. You have two people come to his house, which is different, demand $2,000, which is different, and then threaten to kill his whole family, which is different, coupled with the whole cell phone episode. I think it makes all the sense in the world to think that that higher threat comes from a higher up in the gang, in particular because that's MS-13's MO, as the State Department report confirms. You have gang bosses in jails calling shots on the outside by way of cell phones. The other part of this, and I think this captures the real issue here, is it surely cannot be that the government's account is the only permissible account of the evidence, because the government would have it. You have two rank-and-file members of MS-13 decide on a lark one day to create some ruse with a cell phone. I think that just strains credulity, in no small part because they've been successfully extorting Petitioner for months, and in no small part because it's MS-13. They don't need to do a Broadway shtick in order to ask for $2,000. They can just simply demand $2,000. So Petitioner's been saying from the beginning, yeah, this was a high-ranking guy, and this is what it seemed like to me. This is what I thought it was. That's why I fled. And I think it's completely permissible on the available record for the immigration judge to accredit that inference, and the board's decision to vacate it on threadbare reasoning is incorrect. I see that I'm out of time. Thank you. Thank you, Mr. Graber. Thank you, Mr. O'Malley.